**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Priscilla Szeto (SBN 305961)
priscilla.szeto@nelsonmullins.com
19191 South Vermont Ave., Suite 900
Torrance, CA 90502
Telephone: (424) 221-7400
Facsimile: (424) 221-7499

Matthew G. Lindenbaum (*Pro Hac Vice* forthcoming)
Matthew.lindenbaum@nelsonmullins.com
Matthew E. Brown (*Pro Hac Vice* forthcoming)
Matt.brown@nelsonmullins.com
One Financial Center, Suite 3500
Boston, MA 02111
Telephone: (617) 217-4619

Attorneys for Plaintiff
BIN LU

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIN LU,<br><br>              Plaintiff,<br><br>       v.<br><br>ENIGMA MPC, INC., GUY ZYSKIND, and CAN KISAGUN,<br><br>              Defendants. | Case No.: 3:23-cv-02152<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

## COMPLAINT

Plaintiff Bin Lu ("Mr. Lu"), by and through his undersigned counsel, hereby brings the following claims against Defendants Enigma MPC, Inc. ("Enigma"), Guy Zyskind ("Zyskind"), and Can Kisagun ("Kisagun") (collectively, "Defendants"):

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the claims relating to the matter in controversy exceed $75,000, exclusive of interest and costs and is between citizens of a State and a citizen of a foreign state.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction with respect to this action.

3.     This Court has personal jurisdiction over Enigma because Enigma maintains its principal place of business in San Francisco, California.

4.     This Court has personal jurisdiction over Zyskind because Zyskind purposefully availed himself of the benefits of conducting business in the forum.

5.     This Court has personal jurisdiction over Kisagun because Kisagun purposefully availed himself of the benefits of conducting business in the forum.

### PARTIES

6.     Mr. Lu is, and at all times relevant to this action has been, a resident of the Republic of Singapore who does not reside in the Northern District of California.

7.     Enigma is a corporation organized under the laws of Delaware with its principal place of business in San Francisco, California.

8.     Upon information and belief, Zyskind is a citizen of Israel who does not reside in the Northern District of California.

9.     Upon information and belief, Kisagun is resident of the State of California.

**SUBSTANTIVE ALLEGATIONS**

10.     In 2015, Zyskind and Kisagun founded Enigma with an initial focus of developing technologies dedicated to securely sharing and analyzing encrypted data.

11.     At all times relevant to this action, Zyskind was Enigma's Chief Executive Officer, Chief Technology Officer, President, and Director.

12.     At all times relevant to this action, Kisagun was Enigma's Chief Product Officer.

13.     By 2017, Defendants had published whitepapers concerning the Enigma Protocol, a privacy-focused, decentralized computation platform, and Catalyst, a cryptocurrency investment platform to be deployed on the Enigma Protocol.

14.     To raise funds in support of the Enigma Protocol and Catalyst, Defendants planned an Initial Coin Offering ("ICO") for ENG Tokens, a proprietary digital currency.

15.     From approximately June through September 2017, Defendants promoted the ICO through several internet outlets including, without limitations, Enigma's website and social media channels.

16.     Defendants boasted Enigma's founders' and advisors' connections to institutions such as the MIT Media Lab in an effort to generate interest and participation in the ICO.

17.     Defendants also paid third parties in ENG Tokens to promote the ICO through a so-called "bounty campaign" and create the appearance that ENG Tokens were a sound investment.

18.     The ICO took place from June 2017 through September 11, 2017.

19.     As a result of the ICO, Defendants raised approximately $45 million through the sale of approximately 75 million ENG Tokens to nearly 6,000 people.

COMPLAINT

20.     Shortly after the ICO concluded, ENG Token holders sold ENG Tokens on the secondary market through digital currency exchanges such as Binance.

21.     In September 2017, Mr. Lu purchased approximately 280,000 ENG Tokens on Binance for approximately $1.4 million.

22.     Following the ICO, the United States Securities and Exchange Commission (the "SEC") instituted cease-and-desist proceedings against Enigma pursuant to Section 8 of the Securities Act of 1933 (the "Securities Act").

23.     In a February 19, 2020, Order (the "Order"), the SEC found that, through the ICO, Enigma:

    a.  violated Section 5(a) of the Securities Act by selling unregistered securities; and

    b.  violated Section 5(c) of the Securities Act by offering to sell unregistered securities through the use of any medium or prospectus.

24.     The Order also required Enigma to, among other things, (i) reimburse persons and entities that purchased ENG Tokens during the ICO and submitted claims to Enigma for the same within a given time period and (ii) pay a $500,000 civil monetary penalty to the SEC.

25.     In the wake of the Order, Zyskind and Kisagun abandoned Enigma in favor of the Secret Network, a cryptocurrency project that Enigma characterized as "the successor of the Enigma Protocol."

26.     According to Enigma, the Secret Network is a decentralized blockchain governed by a community of members rather than a single entity.

27.     Upon information and belief, many of the same individuals who were involved with Enigma are now involved in some capacity with the Secret Network.

28.     Upon information and belief, Zyskind is the Chief Executive Officer and Founder of Gamma Research and Development Ltd. d/b/a SCRT Labs ("SCRT

Labs"), an entity that characterizes itself as "the driving force and the founding core development team behind Secret Network."

29.     The Secret Network's members carry out its governance through a series of member-generated proposals, which are subject to the Secret Network's voting protocols.

30.     Between February and December 2020, the Secret Network allowed ENG Token holders to exchange ENG Tokens for Secret Tokens (the "Secret Swap").

31.     The Secret Swap took place between September 2020 and early 2021.

32.     Upon information and belief, Defendants never publicly announced the Secret Swap or otherwise informed ENG Token holders of the Secret Swap.

33.     Mr. Lu never received notice of the Secret Swap.

34.     Once Zyskind and Kisagun abandoned Enigma, there was no longer an active market for the purchase or sale of ENG Tokens.  Their abandonment of Enigma effectively rendered the ENG Tokens valueless.

35.     Zyskind and Kisagun have nearly eliminated Enigma's online presence by, for example, eliminating its website and social media channels and otherwise rebranding Enigma's online presence under the guise of the Secret Network.

36.     Upon information and belief, Zyskind and Kisagun abandoned Enigma because of the SEC cease-and-desist action and resultant Order to effectively re-start the same company as SCRT Labs while leaving Enigma investors holding the bag of worthless ENG Tokens.

37.     SCRT Labs characterizes itself as "the driving force and the founding core development team behind Secret Network."

38.     As a result of Defendants' functional abandonment of Enigma, ENG Tokens are nearly worthless.

39.     Upon information and belief, a unity of interests exists among Enigma, SCRT Labs, Zyskind, and Kisagun because Enigma no longer has a meaningful independent corporate existence and SCRT Labs and/or the Secret Network has effectively supplanted Enigma as its corporate alter ego.

40.     Upon information and belief, Zyskind and Kisagun have acted in bad faith by abandoning Enigma and knowingly depriving ENG Token holders such as Mr. Lu of a means to redeem their ENG Tokens for cash, Secret Tokens, or other valuable consideration.

41.     Mr. Lu will suffer an inequitable result if Zyskind and Kisagun are permitted to use Enigma and/or SCRT Labs as a shield against personal liability.

## COUNT I

## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT

42.     Mr. Lu incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

43.     Section 1770(a)(10) of the California Civil Code (the "Act") prohibits a person engaged in a transaction intended to result in the sale or lease of goods or service to any consumer from "[a]dvertising goods or services with intent not to supply reasonably expected demand, unless the advertisement discloses a limitation of quantity."

44.     Mr. Lu constitutes a consumer under the Act.

45.     Defendants engaged in transactions intended to result or that did result in the sale or lease of goods or services to consumers.

46.     Defendants induced Mr. Lu to purchase ENG Tokens by representing that ENG Tokens would contribute to the development and functionality of the Enigma Protocol and Catalyst.

47.     Mr. Lu had reason to believe that the value of ENG Tokens would increase over time as Enigma garnered greater functionality, attention, and interest.

48.     Defendants destroyed the ENG Tokens' value and deliberately subverted Mr. Lu's reasonable expectations by abandoning Enigma in favor of the Secret Network.

49.     Defendants' actions constituted unfair methods of competition and/or unfair or deceptive acts or practices.

50.     On or about January 6, 2023, Mr. Lu, through his counsel, notified Enigma by certified mail of the particular allegations identified herein and demanded that Enigma correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

51.     On or about February 10, 2023, Mr. Lu, through his counsel, notified SCRT Labs, Zyskind, and Kisagun by certified mail of the particular allegations identified herein and demanded that SCRT Labs, Zyskind, and Kisagun correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

52.     Enigma has not responded to Mr. Lu's January 6, 2023, correspondence.

53.     Neither SCRT Labs nor Mr. Zyskind nor Mr. Kisagun have responded to Mr. Lu's February 10, 2023, correspondence.

54.     Defendants have not made or offered to make an appropriate correction, repair, replacement, or other remedy of the ENG Tokens or their value.

55.     Defendants' violations of the Act were intentional and not the result of a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such an error.

56.     As a result of Defendants' unfair or deceptive acts, Mr. Lu is entitled to recover $1.4 million, plus interest, costs, and attorneys' fees.

**COUNT II**

**CONVERSION**

57.    Mr. Lu incorporates paragraphs 1 through 63 by reference as if fully set forth herein.

58.    Mr. Lu is the lawful owner of approximately 280,000 ENG Tokens.

59.    Defendants wrongfully interfered with Mr. Lu's lawful right to possess the ENG Tokens by deliberately destroying their value by abandoning Enigma to start the same company repackaged as the Secret Network.

60.    Defendants wrongfully interfered with Mr. Lu's lawful right to possess the ENG Tokens by facilitating the Secret Swap without notifying Mr. Lu of the opportunity to exchange ENG Tokens for Secret Tokens.

61.    As a result of Defendants' conduct, Mr. Lu has sustained in excess of $1.4 million in damages.

62.    Pursuant to Section 3336 of the California Civil Code, Mr. Lu is entitled to recover $1.4 million, plus interest, as well as fair compensation for the time and money properly expended in pursuit of the ENG Tokens' lost value.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Lu prays for judgment and relief on all Causes of Action as follows:

      A. For an order declaring that Defendants are liable for violations of the California Consumer Legal Remedies Act;

      B. For an order declaring that Defendants are liable for conversion;

      C. That the Court award compensatory, statutory, punitive, and other damages as to all Causes of Action where such relief is permitted;

      D. That the Court award Mr. Lu the costs of this action, including, without limitation, reasonable attorneys' fees and expenses;

E. That the Court award pre-judgment and post-judgment interest at the legal rate;

F. That the Court grants such other and further relief as may be just and proper.

**JURY DEMAND**

Mr. Lu demands a trial by jury on all counts and issues so triable.

Dated: May 2, 2023                    NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ Priscilla Szeto
Priscilla Szeto (SBN 305961)
Matthew G. Lindenbaum (*PHV* Forthcoming)
Matthew E. Brown (*PHV* Forthcoming)

Attorneys for Plaintiff
BIN LU

COMPLAINT